UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| MIKKI KALINA, *et al*, § | |
| § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. G-10-96 |
| § | |
| JAMES A. BLACKSTOCK, *Individually*, § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

### I.   INTRODUCTION

Before the Court is the defendant, James Blackstock's amended motion for judgment notwithstanding the verdict ("JNOV") (Document No. 49); and (the defendant filed his original JNOV on July 25 as Document No. 47) and the plaintiffs' response (Document No. 51). The Court has reviewed the motion, the response and transcript and, being fully advised on the law, is of the opinion that the amended motion should be denied in part and granted in part.

### II.   PROCEDURAL AND FACTUAL BACKGROUND

The plaintiffs brought this suit against the defendant on claims that he violated their civil rights, and in particular the right to be free from sexual harassment and a hostile work environment, pursuant to 42 U.S.C. § 1983. Without restating the facts as pled and presented to the jury, suffice it to say that the plaintiffs contended and presented testimony that the defendant sexually harassed them by touching and/or fondling them, thereby violating their bodily integrity. The plaintiffs also pled a claim for intentional infliction of emotional distress and sought both compensatory and punitive damages.

A jury was empaneled and testimony and exhibits were presented to the jury over 5 days. On July 15, 2011, the jury returned its unanimous verdict on behalf of the plaintiffs, finding as follows to the Interrogatories presented:

## INTERROGATORIES

**Do you find from a preponderance of the evidence that:**

### INTERROGATORY NUMBER 1:

(1) James Blackstock subjected the plaintiff to a hostile work environment?
Each plaintiff has the burden of proof on her individual claim by a preponderance of the evidence.

Answer "Yes" or "No" as to each plaintiff.

|   |   |   |
|---|---|---|
| a. | Mikki Kalina | Yes |
| b. | Estella "Christy" Strawn | Yes |
| c. | Rebecca "Becky" Sirmans | Yes |

### INTERROGATORY NUMBER 2:

(2) James Blackstock violated the bodily integrity of the plaintiff?
Each plaintiff has the burden of proof on her individual claim by a preponderance of the evidence.

Answer "Yes" or "No" as to each plaintiff:

|   |   |   |
|---|---|---|
| a. | Mikki Kalina | Yes |
| b. | Estella "Christy" Strawn | Yes |
| c. | Rebecca "Becky" Sirmans | Yes |

### INTERROGATORY NUMBER 3:

(3) James Blackstock intentionally inflicted emotional distress upon the plaintiff?
Each plaintiff has the burden of proof on her individual claim by a preponderance of the evidence.

Answer "Yes" or "No" as to each plaintiff:

|   |   |   |
|---|---|---|
| a. | Mikki Kalina | Yes |
| b. | Estella "Christy" Strawn | Yes |
| c. | Rebecca "Becky" Sirmans | Yes |

Only if you have answered Interrogatory Number 1, 2, or 3 "Yes" as to one or more of the plaintiffs, then answer Interrogatory Number 4.

**INTERROGATORY NUMBER 4:**

(4)     What sum of money, if any, if paid now in cash, would fairly and reasonably compensate the plaintiff for her compensatory damages, if any, that resulted from the sexual harassment, violation of bodily integrity, and/or the intentional infliction of emotional distress?

Answer in dollars and cents as to each plaintiff:

|   |   |   |
|---|---|---|
| a. | Mikki Kalina | $50,000 |
| b. | Estella "Christy" Strawn | $100,000 |
| c. | Rebecca "Becky" Sirmans | $50,000 |

**INTERROGATORY NUMBER 5**:

(5)     Did James Blackstock act intentionally, with callous indifference, or with reckless disregard when harassing and/or violating the bodily integrity of the plaintiff?
Each plaintiff has the burden of proof on her individual claim by a preponderance of the evidence.

Answer "Yes" or "No" as to each plaintiff:

|   |   |   |
|---|---|---|
| a. | Mikki Kalina | Yes |
| b. | Estella "Christy" Strawn | Yes |
| c. | Rebecca "Becky" Sirmans | Yes |

Only if you have answered Interrogatory Number 5 "Yes" as to one or more of the plaintiffs, then answer Interrogatory Number 6.

**INTERROGATORY NUMBER 6:**

(6)     What sum of money, if any, do you award the plaintiff as punitive damages?

Answer as to each plaintiff:

|   |   |   |
|---|---|---|
| a. | Mikki Kalina | $1,000,000 |
| b. | Estella "Christy" Strawn | $1,000,000 |
| c. | Rebecca "Becky" Sirmans | $1,000,000 |

We, the jury, have answered the above and foregoing questions as herein indicated, and herewith return our unanimous verdict into the Court.

                                                                            _____/s/_____
                                                                              Jury Foreperson
                                                                              July 15, 2011

### III.    CONTENTIONS OF THE PARTIES

#### A.    The Defendant's Contentions

The defendant asserts that his motion for JNOV should be granted on the basis that: (a) the plaintiffs' claims of sexual harassment and hostile work environment should be dismissed on the basis of insufficient evidence; (b) the plaintiffs' pleadings and the evidence fail to support a claim or submission for bodily integrity under the Fourteenth Amendment; (c) the Court lacks jurisdiction over the plaintiffs' sexual harassment and bodily integrity claims because they are barred by the two-year statute of limitations; (d) the plaintiffs' intentional infliction of emotional distress claims are not supported by sufficient evidence, nor can these claims be charged under Texas law in the employment context; (e) state law prohibits any recovery by the plaintiffs against Brazoria County because the plaintiffs' suit was dismissed with prejudice pursuant to a stipulation between the parties.  As well, the defendant argues this stipulation also bars any recovery by the plaintiffs against him individually; and (f) because the plaintiffs' claims for punitive damages arise out of their bodily integrity claims, the award should be disregarded.

#### B.    The Plaintiffs' Responsive Contentions

The plaintiffs contend that: (a) the defendant failed to move for a directed verdict on all the grounds that he now seeks a JNOV, and so the post-verdict review should be based on plain error; (b) the defendant is being sued individually for sexual harassment and violation of the plaintiffs' bodily integrity, such that suit is appropriate under Section 1983, rather than Title

VII; (c) the statute of limitations is an affirmative defense that the defendant never pled; (d) federal law permits the plaintiffs' claims for intentional infliction of emotional distress against the defendant individually, and, state law does not bar these claims; and (e) the plaintiffs' punitive damages question was properly submitted to the jury.

## IV.    STANDARD OF REVIEW

This case was presented to a jury, which had the responsibility to discern the evidence by weighing conflicting evidence and inferences and determining the credibility of the witnesses. *See Boeing Co. v. Shipman*, 411 F.2d 365, 374-75 (5th Cir. 1969) (*en banc*), (overruled on other grounds). Hence, a jury verdict is entitled to great deference and should be set aside only where the facts and any reasonable inferences instruct overwhelmingly that a reasonable jury could not have arrived at the verdict rendered. *Boeing Co.*, 411 F.2d at 374-75; *Scottish Heritable Trust, PLC v. Peat Marwick Main & Co.*, 81 F.3d 606, 610 (5th Cir. 1996). Federal Rule of Civil Procedure, Rule 50(b) instructs that "a motion for judgment notwithstanding the verdict will not lie unless it was preceded by a motion for a directed verdict made at the close of all the evidence." Therefore, in the instance where a directed verdict was not properly lodged, a court's post-verdict review is limited to a plain error. *See Bay Colony, Ltd. v. Trendmaker, Inc.*, 121 F.3d 998, 1003 (5th Cir. 1997).

## V.    ANALYSIS AND DISCUSSION

An analysis of the defendant's stated contentions, for setting aside the jury verdict, lends itself to the defendant's global arguments that: (a) the evidence fails to support the plaintiffs' claims (sufficiency of the evidence); and (b) state and federal law do not support the plaintiffs' claims under the circumstances. The Court will address the defendant's contentions under these two broad categories.

A.  **Sufficiency of the Evidence (Sexual Harassment)**

The defendant asserts that the evidence fails to support the plaintiffs' claim for sexual harassment under Title VII. To establish this claim, the evidence must establish that: (a) the plaintiff belongs to a protected class; (b) she was subjected to unwelcomed sexual harassment; (c) the harassment was based on their sex or gender; (d) the harassment affected a term, condition or privilege of employment; and (e) the employer knew or should have known of the harassment and failed to take remedial action. *See Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 655 (5th Cir. 2002). However, where the evidence shows that the defendant was a supervisor of a plaintiff, having the authority to either terminate or cause the employee's termination, the employee need not establish that the employer knew or should have known of the harassment and failed to correct it. *See Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999). A summary of the plaintiff's testimony sheds light on the defendant's insufficiency claim.

Rebecca Sirmans testified that she had worked for Brazoria County for some 17 years when, without warning or provocation, the defendant put his hand on her buttock. She entered the elevator and as they were descending he stroked her with several of his fingers. She asked him to stop "playing" with her, and he remarked "it was sticking out and got in [his] way." Earlier, he had sent Sirmans a pornographic image that she did not solicit. After these events, the plaintiff avoided the defendant as much as she could and informed her immediate supervisor about the events. However, no action was taken against the defendant.

Mikki Kalina testified that she had known the defendant her whole life. She worked on his campaign, graduated from high school with his son and saw him occasionally at softball games. On several occasions, he touched her breast when he grabbed her from behind as she

6

was leaving his office. On several occasions, he grabbed her buttock and slapped her buttock with his hand. He made the remark "drop one out for me" and asked her what he needed to do to get in her pants. It started in 2007, when he asked her for a hug. When she attempted to hug him from the side, he "bear hugged" her. When she spoke to her immediate supervisor, she was cautioned that she would be terminated. Eventually, she spoke to the District Attorney about the matter.

Estella Strawn began working for Brazoria County in 1996. She interacted with the defendant four to five times per month as a legal secretary for the Juvenile Probation Department. The defendant first touched Strawn in 2005-06. On one occasion, he slapped and squeezed her buttock in the courtroom in the presence of another probation officer. In March of 2007, he came from behind his bench and grabbed Strawn's breast. She demanded that he stop and reported the incident to her supervisor. Strawn changed her routine and would not go to the defendant's office without another person accompanying her. Nevertheless, he continued, however, to request hugs, which were refused. The plaintiff talked with a female colleague of the defendant, Judge Mills, about the situation. She was advised by Judge Mills that others had complained and had been fired or let go.

In the case at bar, the evidence shows that the defendant, in his capacities as Chair of the Juvenile Board and as a state judge, interacted with the plaintiffs on a regular basis as a supervisor in either or both capacities. Starting in 2007, the defendant began engaging the plaintiffs to give him hugs after meetings that he scheduled with them or that were necessary to their job performance. These meetings were conducted in the privacy of the defendant's office and concerned either the business of the court and/or the business of the Juvenile Board.

The requests of the defendant progressed from a request to engage in a simple side hug to frontal "bear"-like hugs. In his testimony, the defendant freely admits that he "popped" [with his hand] one or more of the plaintiffs on the buttocks, and that he, on at least one occasion, sent a pornographic email to at least one of the plaintiffs. When the plaintiffs requested that he cease the conduct, he refused. The plaintiffs soon learned that they, as individuals, were not the only employees subjected to this conduct. They took the matter to another judge, a female colleague of the defendant, but to no immediate avail. Shortly thereafter, however, the District Attorney was contacted and an investigation was commenced. As a result of the investigation, the defendant was charged with the offense of "official oppression by sexual harassment." *See Tex. Penal Code Ann.*, Sec. 39.03(c) (Vernon Statutes). He entered a plea of "*nolo contendere*" to the charge.

The Court is of the opinion that the evidence at trial was sufficient to overcome the defendant's insufficient evidence claims. Considering the totality of the evidence, the Court opines that the facts and inferences to be drawn strongly support the plaintiffs' claims and that a reasonable jury would determine that the plaintiffs belonged to a protected class, that they were subjected to unwelcomed sexual harassment, that the harassment was based on the plaintiffs' sex or gender, and that the defendant's conduct affected a term, condition or privilege of their employment. *See Green*, 284 F.3d at 655. Therefore, the defendant's contention of insufficient evidence is overruled.

    **B.**    <u>**Sufficiency of the Evidence (Hostile Work Environment)**</u>

Next, the defendant argues that the evidence fails to establish that his conduct was "severe or pervasive," relying on *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th

Cir. 2005). Moreover, the evidence, argues the defendant, must be "subjectively and objectively offensive," citing *Green v. Admin'rs of the Tulane Educ. Fund*, 284 F.3d at 655.

In the Court's view, severity reaches beyond how the victim felt. It considers the damage done to the employment relationship. While the record does support the jury finding that the plaintiffs were severely and emotionally harmed by the bold and rampant conduct of the defendant, the evidence also shows that the plaintiffs could not function in their employment capacities for fear of further unwanted touching and reprisal for not cooperating. The defendant admitted that his conduct was not well received by all women. Hence, he admitted that he would consider his own conduct offensive in certain circumstances.

The Court is of the opinion that the defendant's request for a JNOV on the plaintiffs' hostile work environment claim based on insufficient evidence should be overruled. Equally, the Court's conclusion and ruling is the same on the defendant's contention that the plaintiffs failed to establish the he violated their "bodily integrity" under Section 1983. The evidence is clear that the plaintiffs were greeted with grabbing of their breasts, grabbing and stroking of their buttocks, frontal "bear" hugs, kisses and the stroking of their bodies generally during hugs. This conduct is considered violative of one's bodily integrity. *See Gonzalez v. Ysleta I.S.D.*, 996 F.2d 745, 750 (5th Cir. 1999). This contention is overruled. However, the Court is of the opinion that the punitive damage is excessive. Therefore, it will be reduced to commensurate with the pecuniary damage awards.

### C. The Defendant's Statute of Limitations Claim

The evidence and pleadings show that the defendant failed to plead the affirmative defense of a two-year statute of limitations. A Section 1983 cause of action does not present a limitations issue, in and of itself. Therefore, a party may rely upon a state statute of limitations

9

as a defense to a claim or suit. *See Stanley v. Foster*, 464 F.3d 565, 568 (5th Cir. 2006). After the trial began, it became clear that the defendant intended to present evidence in support of a two (2) year statute of limitations. And, at the conclusion of the plaintiffs' case, the defendant asserted the limitations defense as a basis for a directed verdict. The Court denied the motion on the basis that the defense had not been pled, and the defense had not been tried by consent. The facts have not changed, and no excuse has been offered for the defendant's failing. The Court stands on its earlier ruling and, therefore, denies the defendant's JNOV based on this contention.

      **D.**      <u>**State Law Claims Against the Defendant Not Barred**</u>

The defendant asserts that the plaintiffs' claim for intentional infliction of emotional distress should fail because: (a) it is barred by state law; (b) a settlement was effected between the plaintiffs and Brazoria County; and (c) there is insufficient evidence to support the verdict. Addressing these in turn, the Court is of the opinion that Texas Civil Practices and Remedies Code § 101.106 does not bar a suit against an official in his individual capacity. The law is clear that the plaintiffs could not sustain a suit against Brazoria County, their employer, for intentional infliction of emotional distress. *See Franka v. Velasquez*, 332 S.W.3d 367 (Tex. 2011). Likewise, the plaintiffs could not sustain a Title VII suit against the defendant, as their employer. However, every person is responsible for his individual torts unless they are covered by state law. *See* Tex. Civ. Prac. & Rem. Code § 101.106. Here, the conduct was personal and beyond the scope of the defendant's official duties. Therefore, the defendant's contention fails.

      **E.**      <u>**Remaining Claims of Error**</u>

The defendant's contention, that a settlement by the plaintiffs with their employer under Title VII bars their Section 1983 and state law claims against the defendant, is without merit. The two defendants, Brazoria County and Blackstock, engaged in separate and divisible conduct

against the plaintiffs. Hence, the single tort, single recovery theory does not apply. This contention is also overruled.

Finally, the defendant contends that there is insufficient evidence to support the plaintiffs' state tort claim of intentional infliction of emotional distress. The Court agrees. In order for the jury verdict on this claim to stand, the evidence must establish that an event or harm occurred that exceeded [reached beyond] the harm caused by the allegation, sexual harassment, that can be quantified. *See Hoffman-LaRoche Inc. v. Zeltwanger,* 144 S.W.3d 438, 441 (Tex. 2004). In the case at bar, the facts presented are classic and unique, to sexual harassment. Hence, there is no evidence of aggravation that supports a separate independent tort. Therefore, the Court sustains the defendant's motion for JNOV on this contention.

The Court GRANTS the defendant's motion for JNOV on the plaintiffs' state law tort claim and DENIES the motion on the remaining claims.

It is so ORDERED.

SIGNED at Houston, Texas this 16th day of September, 2011.

_____
Kenneth M. Hoyt
United States District Judge